# PRIORITY SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 14-02605-VAP (KKx)                    Date:  August 12, 2015

Title:        AMPARO LIWANAG AND LORETO LIWANAG -v- BANK OF AMERICA,
               N.A., AND DOES 1-10 INCLUSIVE
=============================================================
PRESENT:         HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

|  Marva Dillard | None Present |
|  Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS:         MINUTE ORDER GRANTING IN PART AND DENYING IN
                     PART DEFENDANT'S MOTION TO DISMISS (DOC. NO. 22)
                     (IN CHAMBERS)

        On June 30, 2015, Defendant Bank of America, N.A. ("BANA") filed a Motion
to Dismiss ("Motion" or "Mot.") the First Amended Complaint ("FAC") filed by
Plaintiffs Amparo Liwanag and Loreto Liwanag ("Plaintiffs").  (Doc. No. 22.)  The
Motion is appropriate for resolution without a hearing, and accordingly, the Court
VACATES the August 4, 2015 hearing.  <u>See</u> Fed. R. Civ. P. 78; L.R. 7-15.  For the
reasons stated below, the Court GRANTS the Motion IN PART AND DENIES THE
MOTION IN PART.  Plaintiffs' FAC is dismissed WITH LEAVE TO AMEND.

EDCV 14-02605-VAP (KKx)
AMPARO LIWANAG AND LORETO LIWANAG v. BANK OF AMERICA, N.A., AND DOES 1-10 INCLUSIVE
MINUTE ORDER of August 12, 2015

# I. BACKGROUND

## A.    Procedural History

Plaintiffs originally filed this action in the California Superior Court for the County of San Bernardino on October 30, 2014.  (Not. of Removal (Doc. No. 1) Ex. A.)  BANA removed the action to this Court on December 22, 2014.  (Not. of Removal.)

On December 26, 2014, Plaintiffs filed a motion to remand; the Court denied that motion on April 24, 2015.[1]  (Doc. Nos. 8, 16.)

On April 15, 2015, BANA filed a motion to dismiss the Complaint.  (Doc. No. 15.)  The Court granted the motion on May 27, 2015, dismissing the Complaint with leave to amend.  ("May 27 Order" (Doc. No. 20) at 14.)  Plaintiffs filed the FAC on June 16, 2015.  (Doc. No. 21.)

BANA moved to dismiss the FAC on June 30, 2015.  (Doc. No. 22.)  Plaintiffs filed their Opposition ("Opp'n") on July 13, 2015.  (Doc. No. 25.)  BANA did not file a Reply.

## B.    Allegations in the FAC

On May 24, 2007, Plaintiffs obtained an adjustable-rate mortgage by executing a Deed of Trust ("DOT"), with Countrywide Bank, FSB, as "nominal lender," Recontrust Company, N.A., as trustee, and Mortgage Electronic Registration Systems, Inc. as the beneficiary.  (FAC ¶ 9.)  The property at issue is an owner-occupied property with no more than four dwelling units, located in San Bernardino County.  (Id. ¶¶ 1, 36-37.)  Plaintiffs made timely payments on their loan until 2014 when "due to economic hardship, Plaintiffs' income decreased making it increasingly difficult for them to maintain their lifestyle."  (Id. ¶ 11.)

---

[1]    At the request of the parties, the Court granted a ninety day stay during the period between Plaintiffs' filing of the motion to remand and the Court's denial. (See Doc. Nos. 9, 11.)

EDCV 14-02605-VAP (KKx)
AMPARO LIWANAG AND LORETO LIWANAG v. BANK OF AMERICA, N.A., AND DOES 1-10 INCLUSIVE
MINUTE ORDER of August 12, 2015

Defendant BANA was the servicer of Plaintiffs' loan at that time.[2]  (Id. ¶ 12.)  In the monthly loan statements mailed to Plaintiffs, BANA advertised that a loan modification was available to them.  (Id.)  After speaking with a BANA representative[3], Plaintiffs submitted a loan modification under the Making Home Affordable Program.[4]  (Id. ¶¶ 13, 15, 16.)  Upon submission of the HAMP application, Plaintiffs were told by BANA representatives their application would be reviewed within thirty days.  (Id. ¶ 18.)  For the first few weeks after submission of the HAMP application, Plaintiffs received no correspondence from BANA.  (Id. ¶ 19.) In light of this lack of communication, Plaintiffs contacted BANA on May 19, 2014, to inquire about the status of their application.  (Id. ¶ 20.)  Plaintiffs were told that new documents detailing their proof of income and financial health would need to be resent.  (Id.)  Though this information had already been sent to BANA, Plaintiffs faxed this information to it again.  (Id. ¶ 21.)  On June 4, 2014, a BANA representative confirmed that all of the additional documentation had been received. (Id. ¶ 22.)

A few days later, on June 9, 2014, a BANA representative told Plaintiffs to re-send the same documents it requested before; Plaintiffs complied with this request and the documents were received on June 10, 2014.  (Id. ¶¶ 23-24.)  Plaintiffs were told to call back in a few more weeks.  (Id. ¶ 24.)

_____

[2]      The FAC states that BANA is the current servicer of Plaintiffs' mortgage loan, but this is inconsistent with later allegations that BANA transferred servicing of their loan to another entity in November 2014.  (Compare FAC ¶ 12 with FAC ¶ 56.)

[3]      In support of their allegation that the application was mailed sometime around April 2014, Plaintiffs have attached a package tracking history from Federal Express.  (FAC Ex. 3.)  That tracking history shows that a package was sent in June 2014, which is inconsistent with the allegations in the FAC.

[4]      Plaintiffs have used the abbreviation "HAMP" to refer to this program. The Court adopts that abbreviation throughout this Order.

EDCV 14-02605-VAP (KKx)
AMPARO LIWANAG AND LORETO LIWANAG v. BANK OF AMERICA, N.A., AND DOES 1-10 INCLUSIVE
MINUTE ORDER of August 12, 2015

On July 3, 2014, Plaintiffs called BANA, and asked to speak with their single point of contact, Elaine Dantes, but were told that Ms. Dantes was unavailable.  (Id. ¶ 25.)  Instead, Plaintiffs were told once again to submit financial documents, although those documents had been mailed to BANA many times before.  (Id.)  Undeterred, Plaintiffs mailed those documents again and BANA confirmed their receipt.  (Id. ¶ 26.)

On July 29, 2014, Plaintiffs called BANA to check on the status of their application.  (Id. ¶ 27.)  A BANA representative told Plaintiffs that no additional documentation was needed and that Plaintiffs "should receive their final modification soon."  (Id.)

BANA denied Plaintiffs' request for a loan modification on August 12, 2014.[5] (Id. ¶ 29; FAC Ex. 3 ("Denial Letter").) The Denial Letter stated that Plaintiffs were not entitled to a loan modification, but were instead qualified for a short sale.  (Id. ¶ 45.)  This was less than ideal because Plaintiffs wanted to keep their house, not sell it.  (Id.)  BANA's denial letter went on to explain that Plaintiffs were not entitled to a loan modification under HAMP for two reasons: (1) because Plaintiffs' monthly housing expenses were not more than 31% of their gross monthly income of $18,214.49 and (2) because the investor or investor group that BANA services the loan for did not give BANA contractual authority to modify Plaintiffs' loan under the HAMP program.  (Id. ¶ 46.)

After Plaintiffs received this letter, they attempted to contact BANA to ask why it denied their loan modification request.  (Id. ¶ 30.)  BANA's representative could not explain why their request had been denied.  (Id.)  Despite many later attempts to

---

[5]     As Plaintiffs contend that the contents of the Denial Letter violated California law giving rise to the claims in the instant action, the Court may consider the Denial Letter's contents because it is incorporated by reference.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

MINUTES FORM 11                                         Initials of Deputy Clerk _____md_____
CIVIL -- GEN                          Page 4

learn why BANA denied their request for a loan modification, BANA never responded.  (Id. ¶¶ 31-34.)

Plaintiffs contend that BANA "failed to accurately assess Plaintiffs' material change in financial circumstances," and thus its first reason for denying the HAMP modification was improper.  (Id. ¶ 47.)  Plaintiffs also aver that BANA's contention that the investors in Plaintiffs' loan did not consent to modification "was not a viable, clear, and/or descriptive reason for denial," because servicers (like BANA) not investors participate in HAMP.  (Id. ¶ 48.)

The FAC asserts three claims against BANA: (1) a violation of portions of the California Homeowner's Bill of Rights ("HBOR"), Cal. Civ. Code § 2924.6; (2) negligent misrepresentation; and (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  (quoting Fed. R. Civ. P. 8(a)(2))); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at

EDCV 14-02605-VAP (KKx)
AMPARO LIWANAG AND LORETO LIWANAG v. BANK OF AMERICA, N.A., AND DOES 1-10 INCLUSIVE
MINUTE ORDER of August 12, 2015

555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F. 3d 1202, 1216 (9th Cir. 2011).

## III. DISCUSSION
### A.   California Homeowner's Bill of Rights Claims

The Court previously dismissed Plaintiffs' HBOR claim because the Complaint asserted claims under sections 2923.4(a) and 2923.4(h), but those sections were inapplicable to Plaintiffs' allegations.  (See May 27 Order at 4-6.)  In dismissing the Complaint, the Court stated that Plaintiffs were "granted leave to amend the Complaint to allege what statutory requirements of § 2923.6(f) were violated by Defendant's letter denying Plaintiffs' application for a loan modification."  (Id. at 8.)

"HBOR's purpose is to ensure that homeowners 'who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options,' such as loan modifications or other alternatives to foreclosure."  Penermon v. Wells Fargo Bank, N.A., 47 F. Supp. 3d 982, 993 (N.D. Cal. 2014) (citation omitted).  "Most importantly, HBOR provides borrowers with a private right of action for certain material violations of HBOR, including California Civil Code §§ 2923.6 (dual-tracking), 2923.7 (single point of

MINUTES FORM 11                                    Initials of Deputy Clerk ____md_____
CIVIL -- GEN                        Page 6

contact), 2924.10 (acknowledgment of receipt), and 2924.17 (verification of documents)." Id. (citation omitted).

The FAC contains general allegations that BANA "has a pattern and practice of foreclosing on property of California homeowners without contacting them to explore viable options to avoid foreclosure as required by Civil Code § 2923.6," and that "BANA has been negligent, careless, and inattentive to [homeowners'] requests in general [for loan modifications]." (FAC ¶¶ 38, 58.)  Aside from these general allegations, the only specific section of HBOR Plaintiffs claim BANA violated is section 2923.4(f).  (Id. ¶ 52.)

### 1.    Sections 2923.6(f)(3) and 2923.6(g)

As discussed in the May 27 Order, section 2926.6(f) sets forth the statutory requirements for letters denying loan modifications.  (May 27 Order at 6-7.)  It provides that

> Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:
>
>> (1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.
>> (2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.
>> (3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.
>> (4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.

> (5) If applicable, a description of other foreclosure prevention
> alternatives for which the borrower may be eligible, and a list
> of the steps the borrower must take in order to be considered
> for those options. If the mortgage servicer has already
> approved the borrower for another foreclosure prevention
> alternative, information necessary to complete the
> foreclosure prevention alternative.

Cal. Civ. Code § 2923.6(f).

While the allegations in the FAC are not entirely clear on this point, Plaintiffs appear to contend that BANA violated section 2923.6(f) in two ways: (1) by miscalculating their monthly gross income (see FAC ¶¶ 46-47) and (2) by failing to give "specific reasons" for investor disallowance (see FAC ¶¶ 52-53 ).  Plaintiffs' first contention regarding miscalculation of their monthly gross income fails to state a claim for violation of section 2923.6(f).  The FAC contains no allegations regarding what the correct amount of their gross income should have been, or any explanation of how their gross income was miscalculated.  Rather, the FAC contains only the flat assertion that "BANA failed to accurately assess Plaintiffs' material change in financial circumstances which was apparent in this matter . . . ."  (Id. ¶ 47.)  Thus, to the extent Plaintiffs assert a claim under section 2923.6(f)(3) because BANA miscalculated Plaintiffs' monthly income, that claim must be dismissed.

By averring that BANA did not assess correctly Plaintiffs' "material change in financial circumstances," in considering their loan modification application, Plaintiffs may also be asserting a claim pursuant to section 2923(g).  That section provides

> In order to minimize the risk of borrowers submitting multiple applications
> for first lien loan modifications for the purpose of delay, the mortgage
> servicer shall not be obligated to evaluate applications from borrowers
> . . . who have been evaluated or afforded a fair opportunity to be
> evaluated consistent with the requirements of this section, unless there
> has been a material change in the borrower's financial circumstances
> since the date of the borrower's previous application and that change is
> documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6(g).  Such a claim, however, would only be applicable if Plaintiffs had submitted multiple loan modification applications; no such allegation has been made here.  Thus, to the extent Plaintiffs assert a claim under section 2923.6(g), that claim must be dismissed.

Accordingly, the Court GRANTS the Motion and DISMISSES Plaintiffs' claims regarding sections 2923.6(f)(3) and (g), WITH LEAVE TO AMEND.

### 2.    Section 2923.6(f)(2)

Plaintiffs' claim under section 2923.6(f)(2) is stated more concisely.  Plaintiffs assert that the Denial Letter was improper because BANA's explanation that it denied their loan modification application because the investor did not give it contractual authority "was not a viable, clear, and/or descriptive reason for denial," and furthermore that BANA failed to provide "specific reasons for the investor disallowance."  (FAC ¶¶ 51-53).  As noted above, section 2923.6(f)(2) requires that if the denial of a loan modification application was based "on investor disallowance, the specific reasons for the investor disallowance," must be provided in the written notice of the application's denial.

The Denial Letter fails to provide "specific reasons" for the investor disallowance; it only states that BANA services Plaintiffs' loan "on behalf of an investor group or group of investors that has not given us the contractual authority to modify your home under [HAMP].  The name of your investor is Wells Fargo Bank, N.A. as Trustee On Behalf of Bear Stearns ARM Trust, Series 2007-5."  (See Denial Letter at 5.)  BANA argues that this statement is sufficient to satisfy section 2923.6(f)(2) because the explanation is clear and, when read in conjunction with the remainder of the letter, Plaintiffs were "explicitly apprised of why the investor declined to approve a HAMP modification in this circumstance."  (Mot. at 6-7.)  Viewing the FAC in the light most favorable to Plaintiffs however, the Court cannot dismiss this claim.  The Court has not located, and the parties have not cited, any case dealing with an alleged violation of this specific section of HBOR, or an example of a sufficiently specific set of reasons for a denial.  Thus, the Court cannot say that Plaintiffs have failed to state a claim for a violation of that section of the statute.  The Denial Letter essentially says that Plaintiffs' application for a loan

modification was denied because the investor did not want to approve the application.  In other words, the application was denied because the investor wanted to deny it.  Though other reasons were given for BANA's denial of the application, for example, Plaintiffs' total gross income, it is not at all clear that those were the same reasons for the investor's denial.

As section 2923.6(f)(2) contemplates "specific reasons" for the denial, the Court cannot say, on this record, that Plaintiffs' FAC fails to state a claim for violation of that section.  Accordingly, to the extent the FAC asserts a claim for violation of section 2923.6(f)(2), the Motion is DENIED.

In denying the Motion as to this claim, the Court makes three observations. First, Plaintiffs pray for relief in the form of "general and specific damages" and "civil penalties" arising from BANA's violation of HBOR.  (FAC ¶¶ 59-60.)  Assuming Plaintiffs prevail on this claim, they would be entitled to actual economic damages and statutory damages only if the servicer violated section 2923.6 and then recorded a trustee's deed upon sale.  See Cal. Civ. Code § 2924.12(b).  In circumstances where no trustee's deed upon sale has been recorded, a party is only entitled to an injunction for the purpose of "enjoin[ing] a material violation" of section 2923.6(f) until "the court determines that [BANA] has corrected and remedied the violation or violations giving rise to the action for injunctive relief."  See Cal. Civ. Code § 2924.12(a)(1)-(2).  Here, Plaintiffs do not allege that a trustee's deed upon sale has been recorded or that they have defaulted on their loan; rather, they only allege that BANA's loan modification application processes were faulty or technically non-compliant.  Thus, based on the allegations of the FAC, Plaintiffs would only be entitled to injunctive relief if they prevailed on this claim.

Second, though BANA does not make this argument in its Motion, section 2923.6 contains a safe harbor provision for certain signatories to a settlement entered in the case entitled "United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC," providing that any signatory thereto that remains in compliance with the terms of the settlement shall have "no liability for a violation of Section . . . 2923.6 . . . ."  <u>See</u> Cal. Civ. Code § 2924.12(g).  It is unclear if BANA is a signatory to the settlement or if it is still in compliance with the settlement.  In any case, courts have declined to allow signatories to use the settlement as a sword to fell claims on a motion to dismiss, instead finding that section 2924.12(g) is an affirmative defense.  <u>See</u> <u>Rijhwani v. Wells Fargo Home Mortg., Inc.</u>, 2014 WL 890016, at *9 (N.D. Cal. Mar. 3, 2014) ("Wells Fargo's argument fails at the motion to dismiss stage, however, because this safe harbor, so to speak, appears to be an affirmative defense to be raised on summary judgment and for which Wells Fargo has the burden of proof."); <u>Segura v. Wells Fargo Bank, N.A.</u>, 2014 WL 4798890, at *5 (C.D. Cal. Sept. 26, 2014).  Thus, while this argument may not be used to dismiss Plaintiffs' claims at this stage, it may well preclude recovery on these claims in the future.

Finally, remedies available pursuant to section 2924.12 may only be imposed where there is a "material" violation of an HBOR statute.  Cal. Civ. Code § 2924.12(a)(1), (a)(2), and (b).  Courts have recognized "there is a dearth of authority interpreting the meaning of 'material.'"  <u>Greene v. Wells Fargo Bank, N.A.</u>, 2015 WL 2159460, at *3 (N.D. Cal. May 7, 2015).  For this reason, these courts have been hesitant to dispose of a claim at the motion to dismiss phase, even where the defendant contends its breach of the statute is not material.  <u>See</u> <u>id.</u> ("In the absence of any authority defining the meaning of a "material violation," the Court declines to impose any additional pleading obligations on Plaintiff.").  The Court also declines to dismiss Plaintiffs' HBOR claims solely on the grounds that Plaintiffs' alleged violations were not material.

## B.    Negligent Misrepresentation

Plaintiffs also assert a claim against BANA for negligent misrepresentation. According to Plaintiffs, BANA made negligent misrepresentations by: (1) telling Plaintiffs they were good candidates for a loan modification; (2) telling Plaintiffs that it would review their loan modification application in good faith, within thirty days; (3) failing to keep track of the documents Plaintiffs submitted in support of their application; (4) failing to properly assess Plaintiffs' change in financial situation; (5) telling Plaintiffs that a final loan was "imminent" or "forthcoming," and (6) failing to assist Plaintiffs in the appeals process by being nonresponsive and transferring the servicing rights of the loan shortly thereafter.  (See FAC ¶¶ 62-64, 68.)

As explained in the May 27 Order, under California law, negligent misrepresentation comprises:

1.    the misrepresentation of a past or existing material fact;
2.    without reasonable ground for believing it to be true;
3.    with intent to induce another's reliance on the fact misrepresented;
4.    justifiable reliance on the misrepresentation; and
5.    resulting damage.

Apollo Capital Fund LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2007).  As a fraud-based claim, negligent misrepresentation must be pleaded with specificity.  Fed. R. Civ. P. 9(b).

The Court dismissed Plaintiffs' negligent misrepresentation claim previously, finding that they had failed to allege facts sufficient to establish that BANA had no reasonable ground to believe its representations to be true and that BANA made any representations to induce Plaintiffs' reliance.  (May 27 Order at 9.)

The FAC fares no better.  First, many of the "representations" Plaintiffs allege BANA made are not representations at all; BANA's alleged failure to keep and analyze Plaintiffs' financial documents, failure to assess properly their change in financial situation, or failing to assist them with their appeal are not representations. Therefore, they cannot form the basis for a negligent misrepresentation claim.

The remainder of the "misrepresentations" in the FAC are similarly insufficient. First, as BANA points out, the FAC's statement of facts does not allege BANA stated that Plaintiffs were "good candidates" for a loan modification, only that "BANA advertised that a loan modification was available," and that a BANA representative "encouraged them . . . to submit a loan modification application . . . . "  (Mot. at 10.; see also FAC ¶¶ 12-13.)  These allegations contain no representations.

Next, Plaintiffs contend that BANA made a misrepresentation when it said that their loan modification application would be reviewed within thirty days.  BANA points out that Plaintiffs' application was reviewed within thirty days — Plaintiffs submitted the final documentation required on July 29, 2014 and the Denial Letter was dated August 12, 2014.  (Mot. at 10; see also FAC ¶¶ 27-29.)  To the extent Plaintiffs contend that BANA employed delaying tactics by requesting their information on multiple occasions, the Court notes that California law vests with the servicer the determination of when an application is "complete."  See Cal. Civ. Code § 2923.6(h) ("For purposes of this section, an application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.").

The allegation that a BANA representative allegedly told Plaintiffs that they "should receive their final modification soon," could be construed in two ways.  First, Plaintiffs could mean that a BANA representative told them that a decision on their loan modification application was scheduled to be sent to them soon.  As discussed above, Plaintiffs received the decision on their loan modification application about two weeks later.  Thus, Plaintiffs have not succeeded in alleging this was a misrepresentation.

To the extent Plaintiffs allege that the BANA representative made an affirmative representation to them that BANA had *approved* their loan modification application, but they were instead sent a denial, this would be a misrepresentation. Even assuming this was a misrepresentation, the BANA representative knew the statement was false, and BANA intended for Plaintiffs to rely on that statement, Plaintiffs have not shown justifiable reliance and damages.  Assuming, arguendo, that BANA did misrepresent to Plaintiffs that a "final modification" was forthcoming,

EDCV 14-02605-VAP (KKx)
AMPARO LIWANAG AND LORETO LIWANAG v. BANK OF AMERICA, N.A., AND DOES 1-10 INCLUSIVE
MINUTE ORDER of August 12, 2015

what are Plaintiffs' damages flowing from that statement?  Though Plaintiffs assert that "but for [BANA's] breaches, Plaintiffs' loan would have been modified sooner, the arrearages would not have been capitalized, the loan would have become current, and monthly payments decreased, thereby avoiding default" (FAC ¶ 73), none of these damages are attributable to the single statement that Plaintiffs "should receive their modification soon."

No damages related to default can be attributed to any of the alleged misrepresentations because the FAC contains no allegations that Plaintiffs defaulted on their payments or that a notice of default has been recorded.  BANA's alleged misrepresentation that a "final modification" was forthcoming also did not prevent the loan from being modified sooner or capitalization of the arrearages.  Perhaps Plaintiffs hopes were dashed or their expectation that they would receive a loan modification were unfulfilled, but Plaintiffs have not alleged sufficiently that they have suffered any damages.

In sum, Plaintiffs have failed to allege a misrepresentation that led to any of their damages.  Accordingly, the Court GRANTS the Motion and DISMISSES this claim, WITH LEAVE TO AMEND.

## C.   Business & Professions Code § 17200

Finally, Plaintiffs assert a claim under California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200.  (FAC ¶ 78.)  They claim that BANA engaged in unfair, unlawful, and fraudulent business practices by, inter alia, failing to comply with HBOR, as discussed above, and by making the negligent misrepresentations discussed above.  (Id. ¶ 82.)

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'"  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 320 (2011).  The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  Id. (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002)).

An "unlawful" business act under § 17200 is any business practice that is

prohibited by law, whether "civil or criminal, statutory or judicially made . . ., federal, state or local."  A business act is "unfair' under § 17200 "if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  Finally, a "fraudulent" business practice under § 17200 is "one which is likely to deceive the public," and "may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive."

In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d 880, 925 (C.D. Cal. 2012) (hereinafter "In re WellPoint") (internal citations and citations omitted).  UCL claims based on fraud are subject to Rule 9(b)'s heightened pleading requirements.  Id. (citing Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-25 (9th Cir. 2009)).

In order to have standing to assert a UCL claim, a plaintiff must "must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition."  Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1590 (2008).  "Because 'reliance is the causal mechanism of fraud,' a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.'"  In re WellPoint, 903 F. Supp. 2d at 925 (quoting Kwikset, 51 Cal. 4th at 326-27).  "Consequently, a plaintiff must show that the misrepresentation was an 'immediate cause' of injury and that but for the fraudulent statements, 'the plaintiffs in all reasonable probability would not have engaged in the injury-producing conduct.'"  Id. (citation omitted).  "This threshold is met where a plaintiff alleges 'he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made.'"  Id. (citation omitted).

BANA argues that Plaintiffs lack standing to assert a UCL claim.  (Mot. at 12.) The Court agrees.  Plaintiffs have not alleged they suffered any monetary damages from the claims that have survived the instant Motion, namely, BANA's technical violation of California Civil Code § 2923.6(f)(2).  As Plaintiffs have not shown they lost money or property or suffered an economic injury that has resulted as a result of that specific violation, they lack standing to assert a UCL claim.

The Opposition asserts that Plaintiffs have standing because they have "a present or future property interest" that was diminished.  (Opp'n at 12.)  The Opposition does not expand on this argument, however.  The Opposition goes on to state that Plaintiffs "were wrongfully deprived of a proper loan modification review, have wrongfully accrued late, interest & default fees as a result and have had to endure the expenses of the instant litigation as a result of Defendant's failure to properly review Plaintiffs' loan modification application."  (Id.)  As noted above, however, Plaintiffs have only stated a claim that their Denial Letter was technically deficient, not that BANA's loan modification processes violated state law; none of the damages Plaintiffs claim flows from that violation.  The Opposition also asserts that Plaintiffs have suffered losses related to default, but the FAC contains no such allegations.

Though the Opposition fails to discuss this section of the FAC in detail, the FAC asserts that Plaintiffs have suffered damages in the amount of their legal fees to "defend from [BANA's] neglect in the loan modification review," damage to their credit report, money and time lost in attempts to come to a resolution with BANA, and "severe emotional distress from fear of being homeless."  Again, none of these damages flow from the only violation of law that the FAC properly states a claim for: violation of section 2923.6(f)(2).

Accordingly, the Court GRANTS the Motion and DISMISSES the UCL claim, WITH LEAVE TO AMEND.

## D.   Leave to Amend

If the Court determines that a claim should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing

EDCV 14-02605-VAP (KKx)
AMPARO LIWANAG AND LORETO LIWANAG v. BANK OF AMERICA, N.A., AND DOES 1-10 INCLUSIVE
MINUTE ORDER of August 12, 2015

in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).  When dismissing a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Id. at 1130 (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted)).  Accordingly, leave to amend should be denied only when allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith.  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).

The Court will allow Plaintiffs a final opportunity to amend their negligent misrepresentation and UCL claims, as the Court cannot find on this record that granting leave to amend with respect to those claims would be futile.

## IV. CONCLUSION

For the reasons stated above, BANA's Motion is GRANTED IN PART and DENIED IN PART.  Plaintiffs must file their amended complaint, if any, no later than August 25, 2015.

**IT IS SO ORDERED.**